## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ANTHONY JAVIER R. M.,

Petitioner,

v.

TODD BLANCHE, *Acting Attorney General*; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; DEPARTMENT OF HOMELAND SECURITY; TODD M. LYONS, *Acting Director of Immigration and Customs Enforcement*; IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID EASTERWOOD, *Acting Director, St. Paul Field Office, Immigration and Customs Enforcement*; and JOEL BROTT, *Sherburne County Sheriff*,

Respondents.

Case No. 26-cv-2283 (LMP/DLM)

**ORDER GRANTING
HABEAS PETITION**

Andra Garcia and David L. Wilson, **Wilson Law Group, Minneapolis, MN**, for Petitioner.

Jaymarie Arlene Miranda and David W. Fuller, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

Petitioner Anthony Javier R. M. filed a petition for a writ of habeas corpus, asserting that he has been detained unlawfully by Respondents (the "Government") in violation of the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth

---

[1]    Respondent Joel Brott has not entered an appearance or otherwise participated in these proceedings.  As used in the Order, "Respondents" and "Government" do not include or refer to Sheriff Brott.

Amendment. *See generally* ECF No. 1. For the reasons below, the Court grants Anthony Javier R. M.'s petition.

## BACKGROUND

Anthony Javier R. M. is a native and citizen of Nicaragua who entered the United States without inspection at the age of 16 in December 2022. *Id.* ¶¶ 30–31; *see* ECF No. 1-1 at 1. Upon entering the United States, Anthony Javier R. M. was apprehended by immigration officials. *See* ECF No. 1 ¶ 32; ECF No. 6-5 at 3. Anthony Javier R. M. was designated as an Unaccompanied Alien Child under 6 U.S.C. § 279(g)(2) and transferred to the care and custody of the Department of Health and Human Services in accordance with 8 U.S.C. § 1232(a)(4). ECF No. 1 ¶¶ 32–33. Anthony Javier R. M. was issued a Notice to Appear charging him with removability under the INA in January 2023, ECF No. 1-1 at 1, and released on recognizance to the custody of family members within the United States, *see id.* at 4–6; ECF No. 6-5 at 3. He currently resides in Minnesota. ECF No. 1 ¶ 13.

In or around December 2024, Anthony Javier R. M. applied for Special Immigrant Juvenile Status ("SIJS"). *See* ECF No. 1 ¶ 35; ECF No. 1-2. In March 2025, United States Immigration and Citizenship Services ("USCIS") approved Anthony Javier R. M.'s application, which granted Anthony Javier R. M. deferred action and allowed him to apply for employment authorization. *See* ECF No. 1 ¶¶ 36–38; ECF No. 1-2. USCIS's grant of SIJS also operated as a grant of parole to Anthony Javier R. M. *See* ECF No. 1 ¶ 39; 8 C.F.R. § 245.1(a). In May 2025, Anthony Javier R. M. applied for employment authorization, which USCIS granted in February 2026. ECF No. 1-3.

On April 9, 2026, Anthony Javier R. M. was arrested in St. Cloud, Minnesota, for driving without a license. ECF No. 1 ¶ 43. The next day, Anthony Javier R. M. was arrested by United States Immigration and Customs Enforcement ("ICE") pursuant to an immigration detainer and an administrative warrant. *See id.* ¶ 44; ECF No. 6-5 at 2–3; ECF No. 6-3; ECF No. 6-4. Anthony Javier R. M. remains in ICE custody at the Sherburne County Jail in Elk River, Minnesota. ECF No. 1 ¶ 45; *see* ECF No. 6-5 at 2.

Anthony Javier R. M. filed a petition for a writ of habeas corpus on April 18, 2026. ECF No. 1. While ICE asserts authority to detain him under 8 U.S.C. § 1225(b)(2), Anthony Javier R. M. contends that he is actually detained under 8 U.S.C. § 1232(a)(4). *Id.* ¶ 41. He asserts that because he has been granted SIJS, his detention violates the INA because it is not the "least restrictive setting." *See id.* ¶¶ 135–38 (quoting 8 U.S.C. § 1232(c)(2)(B)). Anthony Javier R. M. also asserts that his detention is arbitrary and violates his substantive due process rights because it is not "narrowly tailored to serve a compelling government interest." *Id.* ¶¶ 139–47. Finally, Anthony Javier R. M. asserts that his ongoing detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. *Id.* ¶¶ 148–52. Anthony Javier R. M. requests either his immediate release from detention or a bond hearing before an immigration judge. *See id.* at 38.

The Court ordered the Government to respond to Anthony Javier R. M.'s petition by April 28, 2026. ECF No. 3 at 1. The Government timely responded, ECF No. 5, and Anthony Javier R. M. timely filed a reply on May 5, 2026, ECF No. 7.

3

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)).   The protections of habeas corpus extend to those in immigration detention.  *See INS v. St. Cyr*, 533 U.S. 289, 305 (2001).

Having carefully considered the parties' arguments, the Court concludes that the Due Process Clause requires the Government to conduct a bond hearing for Anthony Javier R. M.

## I.    Statutory Framework

Under the INA, a noncitizen may be subject to mandatory detention without a bond hearing under 8 U.S.C. §§ 1225(b) or 1226(c). Section 1226(c) provides that the "Attorney General shall take into custody" any noncitizen who has been "charged with," "arrested for," or "convicted of" any "acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person."  8 U.S.C. § 1226(c)(1)(E)(ii). Other than his April 2026 arrest for driving without a license, Anthony Javier R. M. has no other criminal history, ECF No. 6-5 at 3, so Section 1226(c) does not apply.[2]

---

[2]    The Government does not assert Section 1226(c) as a basis for Anthony Javier R. M.'s detention.  The Court includes this information as context for the analysis that follows.

Section 1225(b) contains two provisions under which noncitizens who are "applicants for admission" may be subject to mandatory detention. *See* 8 U.S.C. § 1225(a)–(b). First, Section 1225(b)(1) applies to "applicants for admission" who are "arriving in the United States" and subjects such noncitizens to removal "without further hearing or review." *Id.* § 1225(b)(1)(A)(i). However, if the noncitizen indicates either an intention to apply for asylum or a fear of persecution, *id.*, the noncitizen "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed," *id.* § 1225(b)(1)(B)(iii)(IV). Second, Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018), and provides that noncitizens "shall be detained" for removal proceedings if they are not "clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A). The Eighth Circuit has held, as a matter of statutory interpretation, that Section 1225(b)(2) "mandates the detention of unadmitted aliens already present inside the United States."[3] *Avila v. Bondi*, 170 F.4th 1128, 1136 (8th Cir. 2026).

Although Section 1225(b)(2) generally requires mandatory detention, a noncitizen detained under that provision may be released through the U.S. Department of Homeland

---

[3]    The Eighth Circuit did not, however, address the due process implications of mandatory detention without a bond hearing under Section 1225(b)(2) for noncitizens who are physically present inside the United States and have developed substantial connections within the country. *See Avila*, 170 F.4th at 1132–38. Instead, the Eighth Circuit remanded the case to the district court "for further proceedings consistent with [its] opinion," *id.* at 1138, which presumably would involve addressing any due process claim that the district court did not reach in the first instance, *see Avila v. Bondi*, No. 25-cv-3741 (JRT/SGE), 2025 WL 2976539, at *2 n.4, *5–7 (D. Minn. Oct. 21, 2025).

Security's ("DHS") exercise of its parole authority. *See* 8 U.S.C. § 1182(d)(5)(A). Release from detention under Section 1225(b)(2) through a grant of parole under Section 1182(d)(5)(A) requires individualized findings that the noncitizen is neither a flight risk nor a danger to the community. *See* 8 C.F.R. § 212.5(b) (stating that parole of a noncitizen detained under Section 1225(b) may be granted "only on a case-by-case basis . . . provided the [noncitizen] present[s] neither a security risk nor a risk of absconding").

Here, Anthony Javier R. M. was granted SIJS, ECF No. 1-2, which means he is deemed "to have been paroled into the United States, regardless of the actual method of [his] entry into the United States," 8 C.F.R. § 245.1(a). The Government only briefly mentions, but does not dispute, that Anthony Javier R. M. was granted SIJS. *See generally* ECF No. 5. Nonetheless, the Government contends that Anthony Javier R. M. is subject to mandatory detention under Section 1225(b)(2) because he "entered the United States illegally" and is "not clearly and beyond a doubt entitled to be admitted." ECF No. 5 at 1–2 (quoting 8 U.S.C. § 1225(b)(2)).

## II.   Due Process

The Due Process Clause prohibits the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that the Due Process Clause applies to all "persons" within the United States, including noncitizens, "whether their presence here is lawful,

unlawful, temporary, or permanent." *Id.* at 693 (citations omitted); *see, e.g.*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) (holding that "all persons within the territory of the United States are entitled to the protection" guaranteed by the Fifth Amendment). Accordingly, because the Fifth Amendment entitles all "persons" to due process of law, noncitizens may challenge the legality of their detention through habeas corpus. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025).

Relying on *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), *Demore v. Kim*, 538 U.S. 510 (2003), and *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020),[4] the Government argues that Anthony Javier R. M.'s procedural-due-process argument is foreclosed and that he is not entitled to additional process beyond the

---

[4]      In addition to these cases, the Government also relies on *Jennings*. *See* ECF No. 5 at 9. That case is inapplicable because it did not address the petitioners' due process claims. *Jennings*, 583 U.S. at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits. Consistent with our role as a court of review, not of first view, we do not reach those arguments." (citation modified)). Instead, just like the Eighth Circuit did in *Avila*, the Supreme Court "remand[ed] the case to the Court of Appeals to consider them in the first instance." *Id.*

7

opportunity to oppose his removal.  *See* ECF No. 5 at 5–10.  The Court disagrees for the reasons explained below.

### A. *Banyee* and *Demore* Do Not Preclude Due Process Challenges to Detention Under Section 1225(b)(2)

The Government is correct that the Eighth Circuit in *Banyee*—and the Supreme Court in *Demore*, on which *Banyee* relied—held that mandatory detention pending the conclusion of removal proceedings is constitutionally permissible.  *See Banyee*, 115 F.4th at 933 (quoting *Demore*, 538 U.S. at 527) ("[T]he [g]overnment can detain an alien for as long as deportation proceedings are still 'pending.'" (emphasis omitted)).  But as even the Government recognizes, *see* ECF No. 5 at 6, 9, *Banyee* and *Demore* involved due process challenges to mandatory detention under Section 1226(c), not Section 1225(b)(2), *see Banyee*, 115 F.4th at 930–31; *Demore*, 538 U.S. at 522–23.  And the Government does not assert that Anthony Javier R. M. is detained under Section 1226(c).  *See generally* ECF No. 5.  Nevertheless, the Government asserts that the holdings in *Banyee* and *Demore* mean Anthony Javier R. M.'s due process claims "fail as a matter of law."  *Id.* at 9.  The Court is unconvinced.

In *Banyee*, the petitioner, a lawful permanent resident, was convicted of armed robbery.  *See* 115 F.4th at 930.  He was placed in removal proceedings and detained under Section 1226(c).  *Id.*  Although he was initially granted cancellation of removal by an immigration judge, the BIA reversed and remanded.  *Id.*  On remand, the petitioner was ordered removed by the immigration judge, and he appealed the order of removal to the BIA.  *See id.*  The petitioner, who by this point had been detained in a county jail for one

8

year, sought habeas relief while that appeal was pending, challenging his "lengthy detention" during the removal proceedings on due process grounds but not "directly contesting the grounds for his mandatory detention." *Id.* at 930–31. The Eighth Circuit rejected the petitioner's argument, concluding that "the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 931 (alteration in original) (quoting *Demore*, 538 U.S. at 526).

Similarly, in *Demore*, the petitioner had been convicted of at least one aggravated felony offense. 538 U.S. at 513. He did not "dispute the validity of his prior convictions" or the government's "conclusion that he [was] subject to mandatory detention under § 1226(c)," and he "conced[ed] that he was deportable." *Id.* at 513–14. Instead, the petitioner argued that his detention under Section 1226(c) violated the Due Process Clause because the government "had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The Supreme Court rejected the petitioner's argument and affirmed that his detention without a bond hearing was constitutionally permissible. *See id.* at 530. Critical to *Demore*'s holding—and *Banyee* to the extent it relies on *Demore*—was Congress's reliance, in enacting Section 1226(c), on findings supporting its "justifiabl[e] concern[]" that deportable criminal aliens who are not detained [would] continue to engage in crime and fail to appear for their removal hearings." *Id.* at 513. The Supreme Court therefore reasoned that the "narrow detention policy reflected in 8 U.S.C. § 1226(c)," as applied to the class of criminal noncitizens in removal proceedings, was constitutionally permissible because "[s]uch detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal

9

proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Id.* at 526, 528.  In effect, the consideration of dangerousness and risk of nonappearance is already baked into Section 1226(c).

Importantly, under the version of Section 1226(c) that existed when *Demore* and *Banyee* were decided, the "vast majority of mandatory-detention cases" under Section 1226(c) involved noncitizens who had been convicted of criminal offenses, with "rare" exceptions involving, for example, noncitizens who were "thought likely to engage in terrorist activity."[5] *Nielsen v. Preap*, 586 U.S. 392, 398–99, 399 n.4 (2019); *see also* 8 U.S.C. § 1226(c)(1) (1996).  As a result, any due process concerns regarding mandatory detention without a bond hearing under the previous version of Section 1226(c) were mitigated because those noncitizens, as part of securing their criminal convictions, would have received the "full procedural protections our criminal justice system offers."  *See Demore*, 538 U.S. at 513; *see also Gomez v. Bondi*, No. SA-26-CA-00727-XR, 2026 WL 753307, at *12 (W.D. Tex. Mar. 13, 2026) (noting that "the convictions themselves may stand in for the individualized determination that might otherwise be taken up at a bond hearing, by demonstrating either that the noncitizen is a danger to the community or a flight risk").

---

[5]    Section 1226(c) was amended in January 2025 and now also requires mandatory detention for noncitizens who have been "charged with" or "arrested for" certain qualifying crimes, whether by a state or the federal government.  *See* Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025) (codified at 8 U.S.C. § 1226(c)(1)(E)).  The Government does not cite, nor is the Court aware of, any cases discussing the due process implications of the current version of Section 1226(c), and instead relies on *Banyee* and *Demore*, which dealt with the previous version of Section 1226(c).

No similar logic applies to Section 1225(b)(2).  Detention under Section 1225(b)(2) requires only a determination that a noncitizen is an "applicant for admission" who is not "clearly and beyond a doubt entitled to be admitted."  Unlike Section 1226(c), there is no requirement that a noncitizen detained under Section 1225(b)(2) be formally accused or convicted of certain criminal conduct or any other "'personal activity' that Congress considered relevant to future dangerousness."  *See Demore*, 538 U.S. at 525 n.9; *see also Carlson v. Landon*, 342 U.S. 524, 541 (1952) (holding detention of Communist Party members without bond was constitutionally permissible because Congress's "understanding of their attitude toward the use of force and violence . . . to accomplish their political aims" provided "adequate ground for detention"); *Zadvydas*, 533 U.S. at 690 (citations omitted) (explaining that "government detention violates th[e] [Due Process] Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections, or, in special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint" (internal quotation marks omitted)).  Unlawful presence within the United States, by itself, is not a criminal offense. *See Arizona v. United States*, 567 U.S. 387, 396 (2012) ("Removal is a civil, not criminal, matter.").  Nor are there congressional findings under Section 1225(b)(2) like those discussed in the context of Section 1226(c) suggesting that a noncitizen who, like Anthony Javier R. M., has not been convicted of any criminal offense, and who is detained under Section 1225(b)(2) based on his allegedly unlawful presence in the United States, is likely to be a flight risk or a danger to the community.  *Cf. Demore*, 538 U.S. at 518–21; S. Rep.

11

No. 104-48, at 32 (1995) ("Congress should consider requiring that all aggravated felons be detained pending deportation.  Such a step may be necessary because of the high rate of no-shows for those criminal aliens released on bond.").

It is true that "Congress may make rules as to aliens that would be unacceptable if applied to citizens."  *Banyee*, 115 F.4th at 931 (quoting *Demore*, 538 U.S. at 522).  But those rules still must comport with the Due Process Clause, for "[l]egislation cannot abridge a constitutional privilege."  *Counselman v. Hitchcock*, 142 U.S. 547, 585 (1892); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (explaining that the "answer to th[e] question" of whether the Due Process Clause is satisfied "is not to be found in the . . . statute").  That *Banyee* and *Demore* found the detention framework in Section 1226(c) constitutionally permissible does not mean that the detention framework in Section 1225(b) is constitutionally permissible merely because both statutes require detention without bond.  This is the case especially considering the different classes of noncitizens to which they are directed: Section 1226(c) applies to criminal noncitizens, and Section 1225(b)(2) now applies to everyone else.  Therefore, the Court does not agree that Anthony Javier R. M.'s due process claim is precluded by *Banyee* and *Demore*.

## B.   *Thuraissigiam* Does Not Preclude Due Process Challenges to Detention Under Section 1225(b)(2)

The Government also points to *Thuraissigiam* to argue that "although some aliens who have established connections in this country may possess due process rights in removal proceedings, 'an alien at the threshold of initial entry cannot claim any greater

12

rights under the Due Process Clause'" than those that are provided by statute. ECF No. 5 at 8 (quoting *Thuraissigiam*, 591 U.S. at 137–40). Again, the Court disagrees.

In *Thuraissigiam*, the petitioner was apprehended within 25 yards of the southern border after physically entering the United States without inspection or an entry document. 591 U.S. at 114. He claimed fear of returning to his home country, but an immigration officer determined that he lacked a credible fear of persecution, as defined by Section 1225(b)(1)(B)(v). *Id.* Accordingly, the petitioner was placed in expedited removal proceedings and detained pursuant to Section 1225(b)(1). *See id.*; *see also* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). He then filed a habeas petition, but "made no mention of release from custody," and the petitioner did not dispute the lawfulness of his "confinement during the pendency of expedited asylum review." *Thuraissigiam*, 591 U.S. at 115, 118. Instead, the petitioner asserted new grounds for his purported fear of persecution and that due process required "judicial review of his allegedly flawed credible-fear proceeding." *Id.* at 114, 138.

The Supreme Court rejected the petitioner's claim. The Court acknowledged that "while aliens who have established connections in this country have due process rights in deportation proceedings . . . Congress is entitled to set the conditions for an alien's lawful entry into this country," and, "as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107. Since the petitioner "was apprehended just 25 yards from the border," he had "no entitlement to procedural rights other than those afforded by statute." *Id.* In other words, because the petitioner was an "applicant for admission" who was "detained shortly after unlawful entry," the process

due to the petitioner was the right to a "determination whether he had a significant possibility of establishing eligibility for asylum," not "review of that determination or how it was made." *Id.* at 140 (citation modified).

*Thuraissigiam* does not preclude Anthony Javier R. M.'s due process claim here for at least two reasons.

First, unlike the petitioner in *Thuraissigiam*, Anthony Javier R. M. directly challenges the lawfulness of his detention without a bond hearing, not the fact that he has been charged with removability or the process by which that determination was made. And *Thuraissigiam*'s due process analysis was limited to whether an "applicant for admission" has greater due process rights with respect to admissibility determinations than those provided by statute. *See id.* at 138–40 ("[A]n alien in respondent's position has only those rights *regarding admission* that Congress has provided by statute." (emphasis added)). *Thuraissigiam* did not, however, address whether the petitioner's detention itself was unlawful or inconsistent with the Due Process Clause and did not deal with a core habeas challenge to detention like Anthony Javier R. M.'s petition here. Indeed, in *Thuraissigiam*, the petitioner's claims were rejected largely because the petitioner "[sought] to use habeas to obtain something far different from simple release," namely "authorization . . . to remain in [the] country" or "to obtain administrative or judicial review leading to that result." *Id.* at 120–21.

Second, a key factual distinction is that the petitioner in *Thuraissigiam* was stopped by immigration authorities "within 25 yards of the border," immediately detained, and never released. *See id.* at 114. And *Thuraissigiam*'s holding, by its own language, is

14

limited to noncitizens at the border—that is, those who are "seeking initial entry." *Id.* at 139–40. In other words, *Thuraissigiam* reinforced the understanding that noncitizens "on the threshold of initial entry stand[] on a different footing" than those who have "passed through our gates." *Mezei*, 345 U.S. at 212.

Anthony Javier R. M., by contrast, was released to the custody of his family after he entered the United States. *See* ECF No. 1-1 at 4–6; ECF No. 6-5 at 3. He then applied for and was granted SIJS, ECF No. 1-2, which operated as a grant of parole regardless of the "actual method of [his] entry into the United States," *see* 8 C.F.R. § 245.1(a). He has since established residence in Minnesota and is authorized to work in the United States. *See* ECF No. 1 ¶¶ 13, 38; ECF No. 1-3. The circumstances of Anthony Javier R. M.'s presence in the United States differentiate him from the petitioner in *Thuraissigiam* because noncitizens "receive constitutional protections when they have come within the territory of the United States *and* developed substantial connections with this country." *Verdugo-Urquidez*, 494 U.S. at 271 (emphasis added). *Thuraissigiam* itself suggests that this distinction is material. *See* 591 U.S. at 138 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)) ("[A]s to 'foreigners who have never been naturalized, *nor acquired any domicil[e] or residence within the United States*, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" (emphasis added)).

To be sure, *Thuraissigiam* discusses the so-called "entry fiction" relating to the legal status maintained by unadmitted noncitizens. That is the concept that "aliens who arrive

15

at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Id.* at 139 (internal quotation marks omitted) (citation omitted). But again, *Thuraissigiam*'s due process analysis focused on a noncitizen's due process rights with respect to admissibility determinations, not as to the noncitizen's detention pending that determination. *See id.* at 138–40. Said another way, a noncitizen who has been paroled into the United States has no greater entitlement to remain in the United States or to procedural protections "leading to that result," *id.* at 120, than a noncitizen who has only just arrived at the border. But the process that is due to determine whether a noncitizen may remain in this country—removal proceedings—is separate from the process to determine whether the noncitizen may be detained while the removability decision is made.[6]

As the Supreme Court has explained, the analysis as to the due process rights of noncitizens depends, in meaningful part, on where and when a noncitizen is detained:

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, *whether their presence here is lawful, unlawful, temporary, or permanent*.

---

[6] Indeed, other than in the context of expedited removal proceedings under Section 1225(b)(1), immigration detention and removal proceedings are governed by different provisions of the INA. *See* 8 U.S.C. §§ 1225(b)(2) (detention), 1226 (detention), 1229a (removal proceedings); *see also* 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond . . . shall be *separate and apart from*, and *shall form no part of*, any deportation or removal hearing or proceeding." (emphasis added)).

*Zadvydas*, 533 U.S. at 693 (emphasis added) (citations omitted); *accord Avila*, 170 F.4th at 1140–41 (Erickson, J., dissenting) (quoting *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 519 (5th Cir. 2026) (Douglas, J., dissenting)) ("[G]overnment intrusions have always been tolerated at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen.").

Anthony Javier R. M. was detained within the geographic borders of the United States more than three years after he released into the custody of his family within this country, ECF No. 1-1 at 4–6, and approximately one year after he was granted SIJS and paroled, *see* ECF No. 1-2; 8 C.F.R. § 245.1(a).  He has since established residence in Minnesota and obtained authorization to work.  ECF No. 1 ¶ 13, 38; ECF No. 1-3.  For these reasons, Anthony Javier R. M.'s case is meaningfully distinguishable from the cases on which the Government relies, and the Court concludes they do not preclude Anthony Javier R. M.'s due process claim here.

## III.   What Process Is Due

Once it is "determined that the Due Process Clause applies, 'the question remains what process is due.'"  *Loudermill*, 470 U.S. at 541 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  "The answer to that question is not to be found in the . . . statute."  *Id.*

Deciding what process is due ordinarily requires some form of interest balancing. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976) (citation omitted) ("'[D]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time,

17

place and circumstances."); *Morrissey*, 408 U.S. at 481 ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.").  But "there can be no doubt" that the Due Process Clause requires, at a minimum, that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950).  Consequently, the Government may not deny "notice" or "an opportunity to be heard" to a noncitizen "who has entered the country, and has become subject in all respects to its jurisdiction, and a part of its population, although alleged to be illegally here."  *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903); *see Wong Wing*, 163 U.S. at 238 ("[E]ven aliens shall not . . . be deprived of life, liberty, or property without due process of law.").

To determine whether civil detention violates a noncitizen's procedural due process rights, courts consider three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that any such procedural requirement would entail.[7] *Mathews*, 424 U.S. at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263–71 (1970)).

---

[7]    The Government argues that *Mathews* is inapplicable because Anthony Javier R. M.'s "due process argument is substantive, not procedural, in nature."  ECF No. 5 at 7, 9–10.  But Anthony Javier R. M. raises both a substantive due process claim *and* a procedural due process claim.  ECF No. 1 ¶¶ 139–47 (substantive due process), 148–52 (procedural due process).  And in any event, Anthony Javier R. M. requests, in part, the opportunity to seek his release on bond.  ECF No. 1 at 38.  This is precisely the type of

A. **Private Interest**

Anthony Javier R. M.'s "interest in being free from physical detention" by the Government "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Parham v. J. R.*, 442 U.S. 584, 600 (1979) (discussing the "substantial liberty interest in not being confined unnecessarily"). Anthony Javier R. M. has been deprived of that fundamental liberty interest.

Anthony Javier R. M., who has no criminal history other than an arrest for driving without a license, ECF No. 6-5 at 3, is presently incarcerated at the Sherburne County Jail "under conditions like those he would be subjected to had he committed a crime." *Axel J. M. C. v. Stanski*, No. 26-cv-2281 (JRT/EMB), 2026 WL 1171344, at *4 (D. Minn. Apr. 29, 2026); *see also Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (noting that under the first *Mathews* factor, courts "consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration"). Further, Anthony Javier R. M. was granted SIJS, ECF No. 1-2; has established residence in Minnesota, ECF No. 1 ¶ 13; and is authorized to work in the United States, ECF No. 1-3. Courts have recognized the "self-evident idea that an individual who has been released from custody to live a productive life

procedure that the Due Process Clause most typically demands. *See Smith v. Org. of Foster Fams. for Equal. & Reform*, 431 U.S. 816, 848 (1977) (citation omitted) ("[B]efore a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." (internal quotation marks omitted)); *Albright v. Oliver*, 510 U.S. 266, 275 (1994) (Scalia, J., concurring) (noting that the Due Process Clause "guarantees certain procedures as a prerequisite to deprivation of liberty").

in the community obtains a protected interest in their 'continued liberty.'" *Abdirashid H. M. v. Noem*, No. 25-cv-4779 (JRT/EMB), 2026 WL 127698, at *4 (D. Minn. Jan. 9, 2026) (first quoting *Hernandez-Fernandez v. Lyons*, No. 5:25-cv-00773-JKP, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025); and then citing *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025)).

For these reasons, the Court therefore concludes that this factor weighs in Anthony Javier R. M.'s favor.

### B.      Risk of Erroneous Deprivation

Anthony Javier R. M. has "passed through our gates" and is therefore protected by the Due Process Clause. *See Mezei*, 345 U.S. at 212; *Zadvydas*, 533 U.S. at 693. It has long been understood that "administrative officers, when executing the provisions of a statute involving the liberty of persons, may [not] disregard the fundamental principles that inhere in 'due process of law' as understood at the time of the adoption of the Constitution." *Yamataya*, 189 U.S. at 100. One of these principles is that "no person shall be deprived of his liberty without opportunity, at some time, to be heard, before such officers, in respect of the matters upon which that liberty depends." *Id.* at 101. Indeed, the Supreme Court has required individualized hearings for deprivations of interests less fundamental than Anthony Javier R. M.'s interest in being free from unnecessary detention. *See Goldberg*, 397 U.S. at 268 (requiring an individualized hearing before termination of welfare benefits).

There is high degree of risk of erroneous deprivation here, and an "individualized bond hearing" at which both Anthony Javier R. M. and the Government can be heard on the issue of whether ongoing detention is appropriate "would alleviate th[at] risk." *Abdirashid H. M.*, 2026 WL 127698, at \*4. To be sure, detention during removal proceedings is a "constitutionally permissible part" of the removal process. *Demore*, 538 U.S. at 531. But the government's authority to detain noncitizens is not limitless and should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing. *See Zadvydas*, 533 U.S. at 690. Here, a bond hearing will ensure that the purpose of Anthony Javier R. M.'s detention is necessary to ensure his appearance at future immigration proceedings and to prevent danger to the community. *Id.*; *see Seling v. Young*, 531 U.S. 250, 265 (2001) ("[D]ue process requires that the conditions and duration of confinement . . . bear some reasonable relation to the purpose for which persons are committed.").

Moreover, Anthony Javier R. M. was paroled by virtue of USCIS's grant of SIJS. *See* 8 C.F.R. § 245.1(a); ECF No. 1-2. Although the Government asserts that it revoked Anthony Javier R. M.'s "deferred action,"[8] ECF No. 5 at 5—which is a benefit of his SIJS, *see* ECF No. 1-2—the Government does *not* assert that it revoked Anthony Javier R. M.'s

---

[8]    Notably, the Government purports to have terminated Anthony Javier R. M.'s deferred action on the same date that its response to Anthony Javier R. M.'s petition was due, *see* ECF No. 5 n.4; ECF No. 3 at 1, meaning the Government arrested Anthony Javier R. M. and detained him for 19 days before revoking his deferred action, *see* ECF No. 6-5 at 3; ECF No. 5 n.4.

SIJS in its entirety. *See* ECF No. 5 at 4–5. Nor, for that matter, does the Government assert that it has followed the regulatory procedures for doing so.[9] *See* ECF No. 5 at 4–5; *see also* 8 C.F.R. §§ 204.11(j)(1), 205.2. And the Government does not mention, much less address, that Anthony Javier R. M. was granted parole by virtue of his grant of SIJS.[10] *See generally* ECF No. 5.

Accordingly, the Court concludes that there is a substantial risk that Anthony Javier R. M. has been and will continue to be erroneously deprived of his fundamental interest in remaining free from unnecessary detention, *see Hamdi*, 542 U.S. at 529; *Parham*, 442 U.S. at 600; *see also Yamataya*, 189 U.S. at 100–01; *Wong Wing*, 163 U.S. at 238. This factor therefore weighs in Anthony Javier R. M.'s favor.

## C.     The Government's Interest and the Burden Imposed by Additional Procedure

The Government misrepresents underlying facts in claiming a strong interest in detaining Anthony Javier R. M. to "make sure [he] appears for immigration proceedings." ECF No. 5 at 10–11. The Government contends that Anthony Javier R. M. "presents with two charges for operating a motor vehicle under the influence" and "has a DUI conviction,"

---

[9]     Although this issue is raised in the parties' briefing, *see* ECF No. 5 at 4–5; ECF No. 7 at 3–4, it is not raised in Anthony Javier R. M.'s petition, *see generally* ECF No. 1. The Court offers no opinion as to whether the Government's purported revocation of Anthony Javier R. M.'s deferred action status was proper because that issue is not properly before the Court.

[10]     The Court also shares in its colleague's concern regarding detention of Special Immigrant Juveniles and the "perversity" animating the federal government's attempts to remove SIJS designees who are intended to receive permanent protection as at-risk children. *See Walter A. v. Easterwood*, No. 26-cv-1393 (SRN/LIB), 2026 WL 836248, at *20 (D. Minn. Mar. 26, 2026).

*id.* at 11, but there is nothing in the record to support this assertion. To the contrary, the Government's own exhibits show that Anthony Javier R. M. has no criminal history other than his April 9, 2026 arrest for "Traffic—Driver's License—Driving Without Valid License," which "remains without disposition." ECF No. 6-5 at 3. Making unsupported claims about Anthony Javier R. M.'s purported criminal history would be unacceptable in any context—not to mention potentially sanctionable, *see* Fed. R. Civ. P. 11(b)(3)—and it is all the more disturbing that the Government does so here in light of its own evidence.[11]

That aside, the Government certainly has a substantial interest in ensuring that noncitizens in removal proceedings appear at their immigration hearings, but the Government has presented no argument that its interests would not be adequately served simply because Anthony Javier R. M. might be released on bond. And the Government does not assert that providing such a hearing would itself impose any meaningful burden. *See* ECF No. 5 at 10–11. Regardless, even assuming there would be some limited burden imposed on the Government, that burden certainly does not outweigh Anthony Javier R. M.'s substantial liberty interest. *See Abdirashid H. M.*, 2026 WL 127698, at *5 (finding that a bond hearing "would impose minimal, if any, financial or administrative burden" on the Government).

In sum, Anthony Javier R. M.'s liberty interest is especially weighty, *Hamdi*, 542 U.S. at 529, and although the Government's interest is also substantial, the Court finds

---

[11]  Moreover, the fact that the Government relies on such misrepresentations of the record further underscores the risk of erroneous deprivation of Anthony Javier R. M.'s liberty.

23

that the burden imposed on the Government here is outweighed by the value of the additional procedural safeguard of a bond hearing justifying Anthony Javier R. M.'s detention, *see Abdirashid H. M.*, 2026 WL 127698, at \*5; *see also Yamataya*, 189 U.S. at 100–01.  This factor also weighs in Anthony Javier R. M.'s favor.

### CONCLUSION

The Court does not conclude that Anthony Javier R. M.'s detention, full stop, is unlawful.  Rather, the Court concludes that continued detention without a bond hearing violates the Due Process Clause, especially considering Anthony Javier R. M.'s grant of Special Juvenile Immigrant Status.  Accordingly, the Court grants Anthony Javier R. M.'s habeas petition insofar as he seeks an individualized bond hearing.[12]

### ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1.  Anthony Javier R. M.'s Verified Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED** as follows:

    a.  By no later than **June 5, 2026**, the Government must provide Anthony Javier R. M. with a bond hearing consistent with 8 C.F.R. § 1003.19(d);

    b.  If the Government does not provide Anthony Javier R. M. with a bond hearing in accordance with this Order, the Government must immediately release Anthony Javier R. M. from detention; and

2.  By no later than **5:00 p.m. on June 9, 2026**, the Government must provide the Court with a status update concerning the results of any bond hearing

---

[12]   As a result, the Court does not reach and offers no view on Anthony Javier R. M.'s remaining claims.

conducted pursuant to this Order or, if no bond hearing was held, concerning the circumstances of Anthony Javier R. M.'s release from detention.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 29, 2026                         *s/Laura M. Provinzino*
                                            Laura M. Provinzino
                                            United States District Judge